UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CHRISTIAN M. BANLEY,<br><br>Plaintiff,<br><br>vs.<br><br>DIANE GARREAU, Cheyenne River Sioux Tribe, ICWA Director, in her official capacity,<br><br>Defendant. | 3:26-CV-03005-RAL<br><br>OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff Christian M. Banley filed a complaint against Diane Garreau, the Cheyenne River Sioux Tribe's Indian Child Welfare Act Director, alleging claims under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). Doc. 1. Banley filed a motion for leave to proceed in forma pauperis and provided a completed prisoner trust account report. Docs. 2, 5.

## I. Motion for Leave to Proceed In Forma Pauperis

At the time Banley filed her complaint and motion for leave to proceed in forma pauperis, she was an inmate at the South Dakota Women's Prison. Docs. 1, 2. While Banley's motion for leave to proceed in forma pauperis was pending, she advised that she had been released from custody. Doc. 6.

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). But circuit courts are split on whether the PLRA continues to apply after the

prisoner is released during litigation. See Carson v. Tulsa Police Dep't, 266 F. App'x 763, 766–67 (10th Cir. 2008) (describing split in authority); see also Domino v. Garland, No. 20-CV-2583, 2021 WL 1221188, at *1 (D. Minn. Apr. 1, 2021).

The United States Courts of Appeals for the Second, Fourth, and Sixth Circuits have held that, under the PLRA, "a prisoner is obligated to pay assessed fees and costs only while he or she remains incarcerated[,]" and "[a]fter release, the obligation to pay the remainder of the fees is to be determined solely on the question of whether the released individual qualifies for pauper status." In re Prison Litig. Reform Act, 105 F.3d 1131, 1139 (6th Cir. 1997); see also McGann v. Comm'r, Soc. Sec. Admin., 96 F.3d 28, 29–30 (2d Cir. 1996); DeBlasio v. Gilmore, 315 F.3d 396, 397 (4th Cir. 2003). By contrast, the Fifth, Seventh, and D.C. Circuits hold, based on the plain language of § 1915(b)(1), that a complainant must pay the full amount of the filing fee if the complainant was a prisoner when the action was commenced. See Gay v. Tex. Dep't of Corr. State Jail Div., 117 F.3d 240, 241–42 (5th Cir. 1997); Robbins v. Switzer, 104 F.3d 895, 897–99 (7th Cir. 1997); In re Smith, 114 F.3d 1247, 1251 (D.C. Cir. 1997).

The Eighth Circuit has not expressly weighed in on this issue but the court's holding in Tyler is instructive. See In re Tyler, 110 F.3d 528, 529–30 (8th Cir. 1997). There, the Eighth Circuit denied the plaintiff's motion to proceed in forma pauperis and refused to address the merits of the plaintiff's mandamus petition until the requisite financial obligations were met. Id. at 529–30. The Eighth Circuit explained that because the plaintiff had previously filed three actions dismissed as frivolous or for failure to state a claim, he was no longer eligible for a § 1915(b) installment plan. Id. at 529; see also 28 U.S.C. § 1915(g) (stating that a prisoner is not eligible for a reduced filing fee or an installment payment plan "if the prisoner has, on 3 or more prior occasions . . . brought an action . . . that was dismissed on the grounds that it is frivolous, malicious,

or fails to state a claim"). As such, the Eighth Circuit ordered the plaintiff to pay the filing fee in full, noting that "[e]ven if [plaintiff]'s petition is dismissed, [plaintiff] will still be assessed the full filing fee because the PLRA makes prisoners responsible for their filing fees the moment the prisoner brings a civil action or files an appeal." Tyler, 110 F.3d at 529–30.

Based on this language, courts within the Eighth Circuit have held that a prisoner who files an action while in custody remains liable for the filing fee even if later released from custody. See Domino, 2021 WL 1221188, at *1 n.3 (stating that the "holding in Tyler that the fee obligation imposed by § 1915(b)(1) is triggered at the time the action is filed . . . is consistent with the conclusion that a complainant who filed an action when he was a prisoner remains liable for the filing fee if he is subsequently released from custody"); Counts v. Missouri, No. 4:24-CV-01437, 2025 WL 812276, at *3 (E.D. Mo. Mar. 13, 2025) (stating that, in light of the Eighth Circuit's decision in Tyler, the § 1983 plaintiff was "responsible for the entire [filing] fee because the full fee was assessed against him prior to his release from custody"); McFee v. Minnesota, No. 11–3614, 2012 WL 514708, at *3 nn.5–6 (D. Minn. Jan. 24, 2012), report and recommendation adopted, 2012 WL 512611 (D. Minn. Feb. 15, 2012) (recognizing that the plaintiff must pay the filing fee, despite having been released from custody before the court ruled on the motion for IFP); Williams v. Doe #1, No. 4:06CV1344, 2006 WL 3804027, at *1 n.1 (E.D. Mo. Nov. 7, 2006) (noting "§ 1915(b)(1) continue[d] to apply" despite litigant's release). But see Clark v. Wood, No. 4:20-CV-1215, 2021 WL 1873561, at *1 (E.D. Mo. May 10, 2021) (stating that if a plaintiff was released from custody before the court ruled on the IFP motion, the court will consider the motion under the non-prisoner standard in 28 U.S.C. § 1915(a)(1)).

The Eighth Circuit's holding in Tyler points to requiring Banley to pay the full filing fee. After all, Banley was an inmate when she filed this action, though she has been released from

custody subsequently. See 28 U.S.C. § 1915(b)(1). This application of the PLRA is consistent with other cases in the District of South Dakota. See Hilston v. Lincoln Cnty. Cir. Judges, 782 F. Supp. 3d 712, 715–717 (D.S.D. 2025); Bell v. Bittinger, No. 4:24-CV-04152, 2025 WL 1424903, at *1–2 (D.S.D. May 16, 2025).

Under the PLRA, however, the Court may accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." Henderson v. Norris, 129 F.3d 481, 483 (8th Cir. 1997) (per curiam) (alteration in original) (quoting McGore v. Wrigglesworth, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1). Banley's certified prisoner trust account report shows an average monthly deposit of $134.79 and an average monthly balance of $9.75. Doc. 5 at 1. Because Banley would owe more than her current balance as her initial partial filing fee, the Court grants Banley's motion for leave to proceed in forma pauperis, Doc. 2, and waives her initial partial filing fee. See 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay her filing fee, Banley must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute

places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the Court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

Id. The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the institution that previously housed Banley.[1] Banley remains responsible for the entire $350 filing fee. See Tyler, 110 F.3d at 529–30.

## II. 1915A Screening[2]

### A. Factual Background as Alleged by Banley

The events giving rise to Banley's claims occurred from April of 2021 through July of 2023. Doc. 1 at 4. During this time period, Banley alleges that Diane Garreau, the Director of the Indian Child Welfare Act (ICWA) program for the Cheyenne River Sioux Tribe, "refused to help [Banley's] children who are 'wards of the Tribal Court' as defined by the Cheyenne River Sioux Tribe, Tribal Court, Children's Code and the Indian Child Welfare Act." Id. Banley alleges that at a hearing on May 10, 2022, regarding the custody of Banley's children, Garreau "directed the

---

[1] "As a practical matter, because [Banley] is no longer a prisoner as defined in 28 U.S.C. § 1915(h), the fee payment provisions of § 1915(b)(2) cannot be implemented at this time. Should [Banley] be a prisoner in the future, § 1915(b)(2) might then become applicable." Domino, 2021 WL 1221188, at *2 n.4; see also McFee, 2012 WL 514708, at *3 n.6 (stating that because the plaintiff was released, the fee payment provisions under § 1915(b)(2) cannot be utilized, but noting that if the plaintiff ever returns to custody by violating his terms of release or committing a new crime, § 1915(b)(2) will then become applicable).

[2] Because Banley filed this action while incarcerated, this Court conducts this screening pursuant to § 1915A. See Domino, 2021 WL 1221188, at *1. But even if Banley's petition was not subject to a § 1915A screening, the Court's analysis would be the same under 28 U.S.C. § 1915(e). See id. at *1 n.2.

attorney for her department, Mr. Dana Hanna, to inform the State court that the [Cheyenne River Sioux Tribe] ICWA program was withdrawing from the case based on a variety of fabrications[,]" even though Garreau "was supposed to defend and be an advocate for[]" Banley's children. Id. Banley claims that her father was present at this hearing, and "was thoroughly disgusted by Mr. Hanna's responses." Id. As a result of Hanna[3] and Garreau's "failure to advocate for [Banley's] children[,]" South Dakota officials took custody of Banley's children in violation of ICWA. Id.

As injuries, Banley alleges that her children have been "harmed in many ways since the SD-DSS took custody of them in the spring of 2021." Id. at 5. Banley alleges that her "minor daughters have been traumatized by being incarcerated by the SD-DSS at a facility called the Children's Home Society[,]" and that her son has "suffered mental anguish over the loss of his sisters and family." Id. Additionally, Banley alleges that "both of [her] parents suffered serious medical problems due to the stress of [her] daughters being taken away[,]" and that her father suffered a heart attack, and her mother suffered a mild stroke.[4] Id. Banley alleges that she suffered

---

[3] Hanna is not named as a defendant. See Doc. 1 at 1, 2. Banley identifies other state officials who were involved in the custody proceedings, id. at 4, but these individuals are also not named as defendants, id. at 1, 2.

[4] Banley cannot bring claims on behalf of her children or parents. Banley is a pro se plaintiff, and she is the only one to have signed the complaint. Doc. 1 at 6. "Under Rule 11(a) of the Federal Rules of Civil Procedure, each pro se party in the case must sign the complaint in order to properly bring this action before the Court." Monroe v. Yankton Sioux Hous. Auth., No. 4:25-CV-04113, 2025 WL 1795824, at *2 (D.S.D. June 30, 2025) (quoting Clay v. Purkett, No. 06-CV-1859, 2007 WL 107758, at *1 (E.D. Mo. Jan. 9, 2007)); see also Ortiz-Diaz v. Social Sec., No. 17-CV-7532, 2018 WL 791256, at *2 (E.D.N.Y. Feb. 7, 2018) (citing Rule 11(a) for the proposition that "[a]ll pro se plaintiffs in a lawsuit must sign the complaint"). Further, while a pro se plaintiff may plead her own case in federal court under 28 U.S.C. § 1654, a pro se plaintiff cannot bring claims on behalf of others. See Jones ex rel. Jones v. Corr. Med. Servs., Inc., 401 F.3d 950, 952 (8th Cir. 2005) (holding that non-lawyers cannot represent the interests of another person); Lone Eagle v. S.D. Bd. of Mins. & Env't, No. 5:26-CV-05068, 2026 WL 1430524, at *5 (D.S.D. May 21, 2026), reconsideration denied, No. 5:26-CV-05068, 2026 WL 1482239 (D.S.D. May 27, 2026).

a miscarriage, and has "been the target of on-going harassment by the Aberdeen Police Dept. for speaking out against them, and as a result, [she] ultimately ended up . . . in prison." Id.

Banley names Diane Garreau, the ICWA Director for the Cheyenne River Sioux Tribe, as a defendant in her official capacity only. Doc. 1 at 2. As relief, Banley requests that "the State . . . pay a minimum of $300,000.00, and punitive damages in excess of $6,000,000.00 for all the mental anguish, all the trauma and harm they caused for [Banley] and [her] children, and [her] parents." Id. at 5. Additionally, Banley requests that the State termination order be vacated, and that the custody of her children and her case be transferred back to Cheyenne River Sioux Tribal Courts. Id. Banley also requests that the ICWA Director "help get [Banley's] children transferred back into Tribal custody." Id.

**B. Legal Standard**

A court must assume as true all facts well pleaded in the complaint when screening under 28 U.S.C. § 1915A. Est. of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam). Civil rights complaints cannot be merely conclusory. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993) (per curiam) (citation omitted); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir. 2007) (per curiam).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted). If a complaint does not

contain these bare essentials, dismissal is appropriate. Beavers v. Lockhart, 755 F.2d 657, 663 (8th Cir. 1985). Twombly requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true[.]" Twombly, 550 U.S. at 555 (citations omitted); see also Abdullah v. Minnesota, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory (citation omitted)). Under 28 U.S.C. § 1915A, a court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). This Court will now assess Banley's claims under 28 U.S.C. § 1915A.

**C. Legal Analysis**

**1. Official Capacity Claims Against Garreau**

Banley sues Garreau in her official capacity only and seeks both monetary and injunctive relief. Doc. 1 at 2, 4–5. Banley states that she sues Garreau under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and alleges violations of her Fifth, Eighth, and Fourteenth Amendment rights. Doc. 1 at 4. "Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." Carlson v. Green, 446 U.S. 14, 18 (1980) (citation omitted). But Bivens only applies to federal officials sued in their individual capacities.[5] See Buford v. Runyon, 160 F.3d 1199, 1203 & n.6 (8th Cir. 1998) (holding

[5] Banley provides somewhat inconsistent statements regarding Garreau's title. At one point, Banley alleges that Garreau "acted under color of federal law (ICWA) and used her title as the Director of a federal agency to deprive [Banley] and her children of [their] constitutional and

that a Bivens claim is barred because the defendant was sued in his official capacity only and noting that "[a] Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." (citation omitted)); see also Little v. South Dakota, No. 14-CV-5069, 2014 WL 6453844, at *3 (D.S.D. Nov. 17, 2014) ("A Bivens action 'may not be asserted against the United States, its agencies, or against federal employees in their *official* capacity.'" (citation omitted)). Because Banley sues Garreau only in her official capacity, Doc. 1 at 2, her Bivens claim against Garreau in her official capacity is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Even if this Court were to construe Banley's claims against Garreau as being alleged under 42 U.S.C. § 1983, these claims would still be dismissed for failure to state a claim because Banley alleges no facts that Garreau was acting under color of state law. Section 1983 provides a cause

---

statutory rights." Doc. 1 at 4. But as this Court understands this statement, Banley is alleging that Garreau acted under color of federal law because she allegedly violated a federal statute, ICWA. See id. Additionally, although Banley alleges that Garreau "used her title as the Director of a federal agency[,]" Banley states that Garreau is the "Director of ICWA program *for the Cheyenne River Sioux Tribe*[.]" Id. (emphasis added). See also Tribal Programs & Services, Cheyenne River Sioux Tribe, https://www.cheyenneriversioux.com/program (last visited Oct. 20, 2026) (listing the ICWA Program as a tribal program); Indian Child Welfare Program, Cheyenne River Sioux Tribe, https://www.cheyenneriversioux.com/indian-child-welfare-program (last visited Oct. 20, 2026) (providing that Garreau is the Director of the ICWA Program, which is "the designated agent of the Cheyenne River Sioux Tribe to respond to all ICWA notices from all 50 states and legally intervene on all children who are members or eligible for enrollment in the Cheyenne River Sioux Tribe."). This Court foregoes a discussion on whether a Bivens action may be brought against a tribal official because a Bivens action only applies to individual capacity claims, as discussed above. See Archambault v. United States, 641 F. Supp. 3d 636, 648–50 (8th Cir. 2022) (discussing considerations for determining if a Bivens claim should be allowed against a tribal officer). Here, because Banley has clearly alleged claims against Garreau in her official capacity only, the Court declines to read her complaint otherwise. See Doc. 1 at 2.

of action against any "person" who, acting "under color of" state law, deprives the plaintiff of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "An essential element of a § 1983 claim is that the defendants acted under color of state law[,]" which means that the defendant "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." Archambault v. United States, 641 F. Supp. 3d 636, 647 (8th Cir. 2022) (first citing Schmidt v. City of Bella Villa, 557 F.3d 564, 571 (8th Cir. 2009); and then quoting Parker v. Boyer, 93 F.3d 445, 447–48 (8th Cir. 1996)).

Banley's complaint names Garreau in her role as the ICWA Director for the Cheyenne River Sioux Tribe, which means she is employed by the Tribe and not by the state. See Doc. 1 at 2, 4. "Tribes and in turn their tribal officers thus are as a general rule not state actors[]" for purposes of § 1983. Archambault, 641 F. Supp. 3d at 648. While Banley alleges that Garreau "allowed the SD State officials to take custody of [her] children[,]" Banley does not allege any facts that Garreau possessed any authority by virtue of state law, and instead refers to actions Garreau took in her role as the Director of the ICWA Program for the Cheyenne River Sioux Tribe.[6] Doc. 1 at 4. See Nguyen v. Foley, No. 21-CV-991, 2021 WL 4993412, at *6 (D. Minn. Oct. 27, 2021) ("It is settled law that a defendant acting under tribal authority is not acting under color of state law and that '[n]o action under 42 U.S.C. § 1983 can be maintained in federal court for persons alleging deprivation of constitutional rights under color of tribal law.'" (alteration in original) (collecting cases)). Therefore, Banley's claims against Garreau in her official capacity

---

[6] Garreau potentially has a defense of tribal sovereign immunity to being named in her official capacity, as claims against tribal officials in their official capacities are treated as claims against the tribe. See Stanko v. Oglala Sioux Tribe, 916 F.3d 694, 697 (8th Cir. 2019) (providing that claims against individual tribal officers acting in their official capacities were barred by tribal sovereign immunity because "[a] suit against a governmental officer in his official capacity is the same as a suit against the entity of which the officer is an agent." (quotation omitted)).

for both monetary and injunctive relief are dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**2. ICWA Claim**

Banley brings a claim against Garreau under ICWA, though she does not specify which ICWA provision Garreau allegedly violated or which ICWA provision provides a basis for the claim. See Doc. 1. Under ICWA,

> Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

25 U.S.C. § 1914. See also Jumping Eagle v. Warren, No. 18-CV-4131, 2021 WL 462644, at *9 (D.S.D. Feb. 9, 2021) (holding that federal courts are courts of competent jurisdiction for claims under § 1914). An "'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" 25 U.S.C. § 1903(4). Here, Banley does not specifically allege that her children meet the definition of an Indian child for purposes of 28 U.S.C. § 1903(4). See Doc. 1. But Banley does allege that her children are "'wards of the Tribal Court' as defined by the Cheyenne River Sioux Tribe, Tribal Court, Children's Code and the Indian Child Welfare Act." Id. at 4. Liberally construing her complaint and taking as true the allegations in Banley's complaint, as this Court must at this stage of the proceedings, this Court assumes that Banley's children each qualify as an "Indian child" [7] for purposes of ICWA.

[7] "Indian child" and "Indian custodian" are terms in 25 U.S.C. § 1914 itself. While "American Indian," "Native American," or "tribal member" probably are more apt terms in today's parlance, federal law commonly and historically refers to those descended from or affiliated with the 575 federally recognized American Indian tribes as "Indians." See Tribal Leaders Directory, U.S. Dep't of the Interior Indian Affs., https://www.bia.gov/service/tribal-leaders-directory (last

**a. Claims for Monetary Relief**

As an initial matter, Banley requests money damages under ICWA. Doc. 1 at 5. But "ICWA does not provide for a cause of action for money damages. The only relief that can be provided is declaratory relief under the Act." Fletcher v. Florida, 858 F. Supp. 169, 173 (M.D. Fla. 1994); see also McClure v. Dohmen, No. 4:07 CV 3159, 2009 WL 801586, at *2 (D. Neb. Mar. 24, 2009) ("Plaintiff seeks damages, but such relief is not available under the Indian Child Welfare Act."); Jackson v. Hennepin Cnty. Dep't of Hum. Res. & Pub. Health, No. 1:22-CV-00036, 2023 WL 3019013, at *1 n.6 (N.D. Ga. Jan. 19, 2023) ("ICWA does not create a private right of action for money damages[.]"), reconsideration denied, 2023 WL 3019014 (N.D. Ga. Mar. 8, 2023). Thus, Banley's ICWA claims for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**b. Claims for Declaratory Relief**

ICWA permits a parent or Indian custodian who loses custody of an Indian child through termination of parental rights under state law to "petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. § 1914. Some courts have held this language grants federal courts the authority to invalidate a state-court order for foster care placement or termination of parental rights if it is in violation of §§ 1911, 1912 or 1913. E.g., Doe v. Mann, 415 F.3d 1038, 1044–48 (9th Cir. 2005). Even if this Court has jurisdiction to invalidate the state-court orders pursuant to §1914, however, federal courts are generally to abstain from interfering with ongoing state-court proceedings under Younger v. Harris, 401 U.S. 37 (1971). In Oglala Sioux Tribe v.

---

visited Oct. 22, 2026) (recognizing that, as of January 30, 2026, there are 575 federally recognized tribes).

Fleming, 904 F.3d 603 (8th Cir. 2018), the Eighth Circuit held South Dakota's custody proceedings are civil enforcement proceedings to which Younger abstention applies. Id. at 610. From the face of Banley's complaint, it does not appear that the state-court proceedings she refers to are ongoing. See Doc. 1 at 4 (providing that the events giving rise to Banley's claims occurred from "April 2021 through July 2023.").

While Banley provides general references to ICWA, see, e.g., id. at 4–5, she does not identify which ICWA provisions she brings claims under, see generally id. As stated above, § 1914 provides a remedy for violations of §§ 1911, 1912, and 1913. Jumping Eagle, 2021 WL 462644, at *5–6. Section 1911 concerns jurisdiction over child custody proceedings for children who fit the definition of an Indian child under ICWA. 25 U.S.C. § 1911. Section 1912 contains provisions regarding pending court proceedings, including what notice is due before child custody proceedings, what remedial efforts must be made before foster care placement or termination of parental rights, and the appointment of counsel for these proceedings. 25 U.S.C. § 1912. Lastly, § 1913 concerns voluntary termination of parental rights or placement in foster care. 25 U.S.C. § 1913. Here, Banley refers to her children as "wards of the Tribal Court[,]" and states that "ICWA law specifically grants 'exclusive jurisdiction' to [her] Tribe[,]" language which tracks that found in 25 U.S.C. § 1911(a). See Doc. 1 at 4–5. Therefore, this Court liberally construes Banley's complaint as alleging a violation of § 1911(a). Under this provision,

> An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

25 U.S.C. § 1911(a).

Here, Banley alleges that her children "are 'wards of the Tribal Court' as defined by the Cheyenne River Sioux Tribe, Tribal Court, Children's Code and the Indian Child Welfare Act[,]" but that Garreau "directed the attorney for her department . . . to inform the State court that the [Cheyenne River Sioux Tribe] ICWA program was withdrawing from the case based on a variety of fabrications." Doc. 1 at 4. Banley alleges that the result of Garreau's "failure to advocate for [her] children" was that state officials took "custody of [Banley's] children in violation of the federal Indian Child Welfare Act[.]" Id. Banley also claims that Garreau "refused to help [her] children[.]" Id. But these statements are not enough to allege a violation of § 1911(a). Banley does not allege, for instance, that Garreau somehow failed to transfer jurisdiction or that because Garreau allegedly withdrew the ICWA program from the case, the Tribe was deprived of jurisdiction. See generally Doc. 1. Although pro se complaints are to be construed liberally, "they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004). This Court is not required to supply additional facts for a pro se plaintiff, nor construct a legal theory that assumes facts which have not been pleaded. Id. Therefore, Banley's claim under 25 U.S.C. § 1911(a) is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

**III. Conclusion**

Accordingly, it is

ORDERED that Banley's motion for leave to proceed in forma pauperis, Doc. 2, is granted. The Clerk of Court will send a copy of this order to the appropriate financial official at the institution that previously housed Banley. It is further

ORDERED that Banley's claims against Garreau in her official capacity under both Bivens and § 1983 are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is further

ORDERED that Banley's ICWA claims for money damages are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). It is finally

ORDERED that Banley's claim under 25 U.S.C. § 1911(a) is dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

DATED October 30th, 2026.

BY THE COURT:

Roberto A. Lange

ROBERTO A. LANGE
CHIEF JUDGE